UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | Case No. 13-CR-0188-CVE |
| DENNIS TROY LANGFORD, | ) |  |
| Defendant. | ) |  |

**OPINION AND ORDER**

Now before the Court is Defendant's Motion to Suppress Evidence and Request for Evidentiary Hearing (Dkt. # 19). Defendant Dennis Troy Langford is charged with one count of felon in possession of firearms and ammunition. Dkt. # 5. Defendant filed a motion to suppress, Dkt. # 19, and plaintiff filed a response. Dkt. # 20. On November 14, 2013, the Court held an evidentiary hearing[1] and heard the testimony of FBI agent Matthew Hewett. Based on the evidence of record, the Court finds and concludes as follows.

**I.**

On October 3, 2013, United States Magistrate Judge T. Lane Wilson signed two search warrants. Dkt. # 19-1 at 13, 25. The search warrants were for the residence of Jameie Harris and a BMW 325 with Oklahoma licence plate 225EHT. Id. at 13, 25. Hewett prepared two eleven-page substantially identical affidavits in support of those search warrants. Compare id. at 1-12, with id. at 14-24.[2] Both warrants were executed on October 7, 2013. Id. at 26. Law enforcement officers

---

[1] Defendant's motion also requested an evidentiary hearing. Dkt. # 19, at 11.

[2] At the evidentiary hearing, it was stipulated that Hewett's affidavits in support of the search warrants and his testimony at the detention hearing would be deemed to be his direct

acted pursuant to the two warrants when they seized the firearms and ammunition described in the indictment.

Hewett's affidavits state that, on August 20, 2002, defendant was convicted of the felony of assault and battery with a dangerous weapon and was sentenced to a term of five years. Dkt. # 19-1, at 4.[3] Hewett's affidavits also describe the following events that suggest defendant illegally possessed a firearm and ammunition and that firearms and ammunition could be found in defendant's residence and vehicle.

On May 29, 2011, a public event for the Joplin tornado victims was held at Missouri Southern State University in Joplin, Missouri, which the President of the United States attended. Id. at 5. Kansas City police officers were providing security for the event. Id. During the event, Kansas City police officers observed defendant carrying a handgun. Id. Defendant was detained and the loaded firearm and three loaded magazines were seized.[4] Id. When defendant was approached by a Joplin police officer during the incident, he was in a 1998 BMW 528i with an Oklahoma license plate. Id. Defendant was informed that his firearm was being seized because it

---

testimony. Dkt. # 30, at 7-8. Hewett has been a special agent with the FBI for seven years. Id. at 9. He is currently assigned to the Tulsa Resident Agency Joint Terrorism Task Force of the Oklahoma City Division. Dkt. # 19-1, at 1. The Court finds that there is no challenge to his credibility in this case.

[3] Defendant may also have been convicted of feloniously pointing a weapon and of an additional misdemeanor charge of assault and battery. Dkt. # 28, at 20-21. Defense counsel does not disagree that defendant was convicted of a felony. Id. at 20. While the affidavits state that defendant committed the crime of feloniously pointing a weapon, they state that he was convicted of assault and battery with a dangerous weapon. Dkt. # 19-1, at 3-4.

[4] The firearm was a Glock 23, serial number KCF432. Dkt. # 19-1, at 5.

was unlawful to carry "a loaded weapon onto school property during a school sponsored event." Id.[5]

On November 3, 2011, defendant faxed a letter to the Joplin Police Department authorizing the release of his firearm to his girlfriend, Vera "Breanne" Heidrick of Seneca, Missouri. Id. at 5-6; Dkt. # 30, at 18. On November 4, 2011, Heidrick retrieved the firearm from the Joplin Police Department. Dkt. # 19-1 at 6.

On August 24, 2013, FBI agents observed defendant at Heidrick's residence. Id. When departing Heidrick's residence on August 26, defendant loaded items into the backseat and trunk of a BMW 325i with Oklahoma license plate 225EHT. Id. This vehicle was registered to defendant. Id. When defendant reached his Oklahoma residence, he unloaded the vehicle. Id.[6]

Defendant maintains a publicly accessible Facebook page. Id. at 7. He is a member of the Facebook group "Oklahoma Gun Exchange." Id. Between October 16, 2012, and February 4, 2013, defendant made numerous posts to the group's page, attempting to find someone who would sell him firearms. Id. On February 28, 2013, he posted that he had purchased a rifle. Id.

On July 30, 2013, defendant participated in a Facebook chat with a minor (Minor A). Id. During the chat, Minor A sent a message to defendant stating that "earlier today he and Mr. John were talking about how you always take/took your handgun with you everywhere . . . ." Id. Also on July 30, 2013, Minor A told another minor through Facebook that Minor A's karate instructor

---

[5] Hewett states that it is his understanding that no charges were filed because the Jasper County District Attorney did not believe that defendant had been convicted of a felony. Dkt. # 28, at 16.

[6] Although defendant's vehicle was stopped by the Oklahoma Highway Patrol while returning to Tulsa, Oklahoma, his vehicle was not searched. Dkt. # 19-1, at 6.

3

showed Minor A his AR-15 that day outside the karate studio where defendant is employed. Id. at 7-8. The same day, FBI surveillance observed Minor A and defendant exit the karate studio, approach a BMW with Oklahoma license plate 225EHT, stand near the rear of the vehicle, and look into the back seat of the vehicle. Id. at 8. A BMW with Oklahoma license plate 225EHT is registered to defendant. Id.

Defendant continually stays overnight at the residence of Jameie Harris[7] and parks the BMW in the front yard of her residence. Id. Hewett states that the residence of Jameie Harris is believed to be defendant's residence. Id.

In the affidavits, Hewett states that, in his experience, firearms and ammunition are generally kept at their owner's residence and in their owner's vehicles. Id. at 2. He also states that individuals who are prohibited from possessing firearms and ammunition "often maintain possession of their illegal firearms and ammunition for long periods of time, often in excess of one (1) year." Id.[8] He further states that, in his experience, individuals who possess firearms often also possess ammunition. Id. The two affidavits did not disclose that Minor A was the target of an ongoing federal investigation.

---

[7]  Jameie Harris is a manager at the karate studio where defendant works. Dkt. # 28, at 28. She is both defendant's supervisor at the studio and his roommate. Id.

[8]  Hewett states that the reasons owners of firearms and ammunition often preserve and maintain them over long periods of time include "the facts that firearms are somewhat expensive, there is an administrative delay in buying them (particularly true for convicted felons who must obtain firearms by subterfuge) and firearms do not easily wear out." Dkt. # 19-1, at 3. Additionally, in his experience, "firearms are not depleted through use, nor are they exchanged immediately after being obtained. Firearms are like expensive tools, which their owners keep and maintain over long periods of time." Id.

On cross-examination at the evidentiary hearing, Hewett testified that he was not asked any questions by the magistrate judge, other than being asked to swear that everything in his affidavits was true. Dkt. # 30, at 13. He further testified that he did not unilaterally provide any additional evidence orally to the magistrate. Id. Hewett also testified that he was not aware of any recording of his presentation of the affidavits to the magistrate judge. Id. at 11.

## II.

Defendant argues that the affidavits in support of the search warrants do not provide probable cause for the issuance of the search warrants. Dkt. # 19, at 3. Specifically, defendant argues that the events that occurred in 2011 are stale, and that no nexus was established between the firearms and ammunition and the places to be searched. Id. at 5-6. Additionally, at the evidentiary hearing, defense counsel argued that defendant's Facebook page had not been sufficiently linked to defendant. Dkt. # 30, at 15-17, 19-22. Defendant also argues that the affidavit failed to disclose that Minor A was the target of an ongoing federal investigation and that this omission may be sufficient to vitiate probable cause. Dkt. # 19, at 7-8. Defendant further argues that the Leon good faith exception is inapplicable. Id. at 8-10.

### A.

#### 1.

The facts presented in an affidavit must "'warrant a man of reasonable caution' to believe that evidence of a crime will be found at the place to be searched." United States v. Nolan, 199 F.3d 1180, 1183 (10th Cir. 1999) (quoting Texas v. Brown, 460 U.S. 730, 742 (1983) (plurality opinion)). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether . . . there is a fair probability that contraband or evidence of a crime will be found in a particular

place." Illinois v. Gates, 462 U.S. 213, 238 (1983). A magistrate's determination of probable cause is granted great deference, and the magistrate need only have a substantial basis for his determination that probable cause existed, given the totality of the circumstances presented by the affidavit. United States v. Tuter, 240 F.3d 1292, 1295 (10th Cir. 2001). However, a nexus must exist "between suspected criminal activity and the place to be searched. United States v. Corral-Corral, 899 F.2d 927, 937 (10th Cir. 1990).

The affidavits provide sufficient facts to establish probable cause that evidence of a crime would be found in the places to be searched. Defendant has been convicted of a crime punishable by imprisonment for a term exceeding one year. Defendant allegedly attempted to purchase firearms using Facebook and announced on Facebook that he purchased a firearm. A third party (Minor A) stated that he was shown a firearm by the defendant outside defendant's place of employment. An FBI surveillance team observed defendant and Minor A inspecting the backseat of defendant's vehicle at the time and place that Minor A said defendant had shown him a firearm. These facts clearly provide probable cause to believe that defendant illegally possessed a firearm and that evidence of that crime could be found in defendant's vehicle.

"[A] law enforcement agent's opinion, based upon his professional expertise, that evidence of illegal activity will be found in the place to be searched, is entitled to consideration in [the] determination of whether probable cause existed at the time a warrant issued." United States v. Mathis, 357 F.3d 1200, 1205 (10th Cir. 2004). Hewett, a law enforcement agent, declared in the affidavits that, in his experience, firearms and ammunition are generally kept at their owner's residence and in their owner's vehicles. This declaration, along with defendant's statement that he purchased a firearm and Minor A's statement that defendant possessed a firearm, provides a

6

sufficient nexus between defendant's residence and his suspected criminal activity.[9] The Court finds that a sufficient nexus exists between the suspected criminal activity and both places to be searched.

**2.**

Probable cause "cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched." United States v. Snow, 919 F.2d 1458, 1459 (10th Cir. 1990). Whether information is stale does not depend only on the amount of time elapsed between the facts relied upon and the issuance of the warrant; it also depends on "the nature of the criminal activity, the length of the activity, and the nature of the property to be seized." United States v. Shomo, 786 F.2d 981, 984 (10th Cir. 1986).

Defendant argues that the events that occurred in 2011 are "too stale to lend weight to a probable cause determination." Dkt. # 19, at 5. If the events occurring in 2011 were the only facts averred to in the affidavit, it is possible that the facts would be too stale to support probable cause.[10] However, the totality of the circumstances must be examined in determining whether probable cause exists. These 2011 events are far from the only information presented in the affidavits. The remaining information, which defendant does not argue is stale, is sufficient to establish probable cause, and this Court so finds. Nonetheless, the 2011 events do serve to show that defendant had previously possessed a firearm despite being a prohibited person, making allegations that defendant is currently possessing a firearm marginally more credible. Additionally, they permit the inference

---

[9]  Additionally, it is generally reasonable to assume that a person will keep his weapons in his residence. See United States v. Shomo, 786 F.2d 981, 984 (10th Cir. 1986).

[10] However, Hewett's statement that prohibited individuals often possess firearms for long periods of time does weigh against the information being stale. It is illustrative that, in this case, the firearm seized in Joplin in 2011 was among the items seized when the search warrants were executed. Dkt. # 28, at 17-18.

that when defendant loaded items from Heidrick's residence into his car on August 26, 2013, he may have loaded the firearm retrieved by Heidrick in 2011 into the car as well.

**3.**

At the detention hearing, defendant argued that a magistrate judge cannot rely on an agent stating that a Facebook page belongs to a person absent evidence of ownership, such as an internet protocol (IP) address or service provider information. Dkt. # 30, at 20. IP addresses are not always required to link an individual to his online presence. See U.S. v. Vanbrackle, 397 Fed. App'x 557, 560 (11th Cir. 2010) (per curium) (holding that IP address information is not necessarily required to establish a link between an individual's electronic activity and an individual's residence); U.S. v. Bach, 400 F.3d 622, 629 (8th Cir. 2005) ("Even without IPs, it was reasonable to believe on the basis of the other information in the affidavit that Bach had a computer at his residence [that contained evidence of criminal activity]."). Probable cause does not require proof beyond a reasonable doubt; it requires only a fair probability. See Gates, 462 U.S. at 238. Although it is possible that the Facebook account purporting to belong to Dennis Langford was fraudulently created, the more likely explanation is that the Dennis Langford Facebook account is managed by defendant. See United States v. Terry, 522 F.3d 645, 648-49 (6th Cir. 2008) (holding that probable cause may exist even if innocent explanations exist, such as the possibility that a hacker illicitly used a defendant's email account). While information relating to the IP address used to edit the Dennis Langford Facebook account may have been helpful, it is by no means required.

Examining the totality of the circumstances presented by the affidavits, this Court finds that probable cause existed for both search warrants.

**B.**

Defendant also argues that the affidavits failed to disclose material facts. Dkt. # 19, at 7. Defendant notes that the affidavits do not disclose that the FBI is investigating Minor A or the circumstances of the investigation. It is a violation of a defendant's Fourth Amendment rights to knowingly or recklessly omit from an affidavit information that would have vitiated probable cause if it had been included. United States v. Kennedy, 131 F.3d 1371, 1376 (10th Cir. 1997); Stewart v. Donges, 915 F.2d 572, 582-83 (10th Cir. 1990). However, immaterial omissions (i.e., those which do not vitiate probable cause) do not violate a defendant's rights. Stewart, 915 F.2d at 582. "In a case where the defendant alleges information was intentionally omitted from an affidavit, the existence of probable cause is determined by examining the affidavit as if the omitted information had been included and determining whether the affidavit would still give rise to probable cause." U.S. v. Basham, 268 F.3d 1199, 1204 (10th Cir. 2001).

Plaintiff has submitted sealed, ex parte documents related to the investigation of Minor A. Dkt. # 23. None of the information contained in the documents is sufficient to vitiate probable cause. This Court finds that, if the omitted information had been included in the affidavits, probable cause would have still existed. Therefore, the omission of information relating to the investigation of Minor A is immaterial. Defendant's rights were not violated by the affiant's failure to include within the affidavits the facts surrounding the investigation of Minor A.

**C.**

Finally, defendant argues that the "good faith exception," which was established in United States v. Leon, 468 U.S. 897 (1984), is inapplicable, and that the exclusionary rule is the appropriate remedy. Dkt. # 19, at 8-10. However, even assuming, arguendo, that the warrant did lack sufficient

9

probable cause, the good faith exception should apply and the exclusionary rule should not. Generally, there is a presumption that "when an officer relies upon a warrant, the officer is acting in good faith." United States v. Cardall, 773 F.2d 1128, 1133 (10th Cir. 1985); United States v. Harrison, 566 F.3d 1254, 1256 (10th Cir. 2009). "It is only when reliance [on the warrant] was wholly unwarranted that good faith is absent." Cardall, 773 F.2d at 1133. However, where an officer "knows or should have known that a search warrant was invalid," that officer "may not rely upon the good faith exception to immunize his subsequent seizure of evidence." Harrison, 566 F.3d at 1256 (citing Leon, 468 U.S. at 919). Because the purpose of excluding evidence is to "deter unlawful police conduct," evidence "should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." Leon, 468 U.S. at 919 (quoting United States v. Peltier, 422 U.S. 531, 542 (1975)).

The Supreme Court has determined that there are situations where the good faith exception should not apply. These include instances where a magistrate judge was misled by the affiant and the affiant knew or should have known the information was false; "where the issuing magistrate wholly abandoned his judicial role" so that "no reasonably well trained officer should rely on the warrant;" where a "warrant [is] based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;'" or where a "warrant [is] so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." Leon, 468 U.S. at 923 (citations and quotations omitted). Where an affidavit does not establish probable cause, suppression is not warranted if the officers relied in good faith on a duly authorized search warrant,

subject to the exceptions outlined above. United States v. Tuter, 240 F.3d 1292, 1300 (10th Cir. 2011).

Defendant argues that the "good faith exception" should not apply because the affidavits are "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," and because the magistrate judge was misled by the allegedly material omission that Minor A was the subject of a federal investigation. Dkt. # 19, at 8-10. The affidavits in this case are not devoid of indicia of probable cause. The affidavits provide facts tending to show that defendant is a prohibited person, that defendant has previously possessed firearms despite being a prohibited person, that defendant has sought to purchase firearms, that defendant did purchase a firearm, that defendant possessed a handgun, and that defendant showed a minor a rifle located in his vehicle. Because sufficient indicia of probable cause exists, this Court finds that, even if the warrant was invalid, the officers relying on it acted in good faith.

As discussed above, the omission of the fact that Minor A was the subject of a federal investigation is immaterial. But even if the investigation of the minor was material, the magistrate judge was not misled by the omission, as he was aware of the investigation of the minor. This Court has been provided irrefutable, sealed documentary evidence that the investigation of the minor was disclosed to the magistrate judge. Dkt. # 23. This Court finds that the magistrate judge was not misled and that the Leon good faith exception would apply if the search warrants were invalid.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress Evidence and Request for Evidentiary Hearing (Dkt. # 19) is **granted in part and denied in part**: it is granted as to an evidentiary hearing; it is denied as to suppression.

**DATED** this 15th day of November, 2013.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE